BOOK, *Appellant*, v. BEASLY.

Division Two, April 3, 1897.

138  455
148  344
138  455
159  330
f159  555

1. **Conveyance**: DEED: ABSOLUTE ON ITS FACE: MORTGAGE: EQUITY: EVIDENCE. It is the well established law in this State that a court of equity may decree a conveyance, absolute in form, to be only a mortgage, and parol evidence is competent to show that such a deed was intended only as a security for debt.

2. ———: ———: ———: ———: ———. Whether a conveyance, absolute on its face, amounts only to a mortgage, depends largely upon the peculiar facts of the case, the real inquiry being as to whether the conveyance, when executed, was intended merely as a security for a debt.

3. ———: ———: ———: ———: ———. Where the evidence showed that a quitclaim deed from defendant to plaintiff had its inception in an application for a loan made on behalf of defendant by plaintiff, and that, failing in this application, plaintiff agreed to take this deed and assume antecedent debts for which the defendant was liable; that the grantor remained five years in possession of the premises before the grantee demanded any rent of him; that the grantee held the notes paid by him as evidence of. debts; and that the property at the time of the conveyance was worth $3,500 and soon increased in value to $5,000, whereas the debts assumed by the grantee only amounted to $2,500, the trial court is justified in holding such conveyance to be a mortgage.

4. ———: ———: ———: ———: EVIDENCE: BURDEN OF PROOF. A conveyance, absolute on its face, is presumed to be what it purports to be, and the burden of proof is on the party attempting to overcome this presumption.

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*T. C. Dungan* for appellant.

(1) The defendant, alleging the deed to be a mortgage only, must make strict, clear, satisfactory,

and convincing proof that it was a mortgage, and that it was not an absolute or conditional conveyance. 1 Jones on Mort., secs. 335, 262, 267, 272; 1 Greenleaf Ev., secs. 45, 97, 200; *Ringo v. Richardson*, 53 Mo. 394; *Worley v. Dryden* and cases cited, 57 Mo. 226; *O'Neil v. Capelle*, 62 Mo. 203; *Schradski v. Albright*, 93 Mo. 43; *Kirby v. Harsh*, 16 N. W. Rep. 86; *McCormick v. Herndon*, 31 N. W. Rep. 303; *Sloan v. Becker*, 26 N. W. Rep. 730; *Becker v. Howard*, 44 N. W. Rep. 755, which seems peculiarly applicable under the facts herein; *McArthur v. Robinson*, 62 N. W. Rep. 713; *Wilson v. Parshall*, 29 N. E. Rep. 297; *Blake v. Taylor*, 32 N. E. Rep. 401; *Keithley v. Wood*, 38 N. E. Rep. 149; *Ahern v. McCarthy*, 40 Pac. Rep. 482; *Dignan v. Moore*, 36 Pac. Rep. 146. (2) The effect of the conveyance must be determined by the peculiar facts and circumstances that surround it, and mark its character, and indicate the intentions of the parties. The intention of the parties is the only safe criterion, and the only true and infallible test. The character of the transaction is fixed at the inception of it, and is, and remains, what the intention of the parties, at the time, makes it, and no new promise, agreement, or understanding can afterward alter or change such character, unless upon a new consideration between the parties. 1 Jones on Mort., secs. 245, 256–258, 263–269; Pomeroy, Eq. Jur., sec. 1194; *Blake v. Taylor*, 32 N. E. Rep. 401; *Rue v. Dole*, 107 Ill. 275; *Fisher v. Greene*, 31 N. E. Rep. 174; *Becker v. Howard*, 44 N. W. Rep. 755.

*H. S. Kelley* and *H. T. Alkire* for respondent.

(1) A conveyance intended as a security for a loan, though absolute in form, will be treated as a mortgage. *Cobb v. Day*, 106 Mo. 278; *Zittlosen Tent*

*Co. v. Bank*, 57 Mo. App. 19.   And a warranty deed, executed to secure advances of money, though absolute on its face, may be construed as a mortgage. *Hach v. Hill*, 106 Mo. 18.   (2)   Where the evidence shows that the deed was not intended to be absolute, but it is doubtful whether it was a conditional sale or a mortgage, the doubt should be resolved in favor of its being a mortgage.   *King v. Greves*, 42 Mo. App. 168; *White v. University Land Co.*, 49 Mo. App. 450.   (3) The effect of the conveyance must be determined by the intention of the parties to be gathered from the situation and surroundings of the parties, their conduct and the circumstances attending the transaction. The situation of the parties, the circumstances surrounding them, and their conduct and actions, conversations and agreements, at the time of making the quitclaim deed, and what Book said about it on divers occasions afterward to many different witnesses, were all before the trial court, and having the witnesses before him and seeing their general appearance and manner upon the stand, he was forced to the conclusion that the deed was intended as a security or mortgage at the time it was executed.   *Sayer v. Devore*, 99 Mo. 437;  *Bartlett v. Brown*, 121 Mo. 353;  *Kinzer v. Kinzer*, 130 Mo. 131.   (4)   The action was ejectment for certain pieces of land.   The defendant set up an equitable defense, and prayed for affirmative relief, and having stated that the plaintiff was in possession of certain lands conveyed by the deed as security for the payment of certain indebtedness, and that he had received rents and profits from the land, and prayed for an accounting, the case became an equitable one, triable by the court, and it was competent for the court to give all proper relief embraced within the pleadings and supported by the evidence in the case. *Woodward v. Mastin*, 106 Mo. 324; *Reyburn v. Mitchell*,

106 Mo. 365; *Barnes v. McMullins*, 78 Mo. 260; *Muenks v. Bunch*, 90 Mo. 500; *Schuster v. Schuster*, 93 Mo. 443; *Allen v. Logan*, 96 Mo. 591; *O'Day v. Conn*, 131 Mo. 321.

GANTT, P. J.—This suit was commenced as an action of ejectment for a dwelling house and a small tract of land of about one and one half acres near by Tarkio river and on the public road and being a part of lot 6, southeast quarter of section 32, township 61, range 39, in Holt county, Missouri. The answer was a general denial and equitable defense praying for an accounting and for affirmative relief. In short it admitted that said defendant was in possession of the said house, tract of land, and appurtenances, and alleged ownership and right of possession thereto, and also, as a further and equitable defense, "that the premises sued for were a part of a larger tract of land in same section, township, and range, formerly belonging to defendant; that defendant was greatly indebted, and that said indebtedness was secured by deeds of trust on said lands, and that said defendant only had an equity of redemption in all of said land and premises. That the plaintiff and numerous other persons had signed the defendant's said notes as additional security. That at the solicitation of plaintiff and for the security of plaintiff and the other sureties on said notes the plaintiff induced the said defendant to deed all of the said land to plaintiff, and turn same over to him, plaintiff, to control and to rent the land and buildings, until such time as the money could be borrowed, or could be had from the rents and proceeds thereof sufficient to pay off and discharge all of said debts, and release all said sureties, pay all taxes, etc., and himself a reasonable amount to compensate plaintiff for his trouble, and when said indebtedness and

expenses were fully paid that plaintiff was to re-deed
all of said premises to said defendant.'' In other
words, that said deed, although absolute on its face,
was understood, agreed, and intended between the
parties, at the time, to be only a mortgage and not an
actual sale and conveyance to the plaintiff. That the
plaintiff agreed with the defendant that he should con-
tinue, with his family, to live in the house and upon
the part of the land sued for until such time as the
said mortgage debt should be paid and when so paid
that said land should be reconveyed to him, the said
defendant; that in pursuance of said agreement, de-
fendant had continued to live in said house and occupy
the premises sued for in this action at the commence-
ment of this suit but had turned over all the balance of
said tract to plaintiff. He asked for an accounting
and reconveyance of the whole tract.

The reply was a general denial.

The court upon a hearing made its finding that the
quitclaim deed made by defendant Beasly and wife to
plaintiff Book on April 7, 1887, and recorded in deed
record 46, page 517, in the recorder's office of Holt
county, conveying the southeast quarter of the south-
east quarter, and part of lot 5 (13.10 acres), and lot 6,
of the southeast quarter of section 32, in township 61,
range 39, for the consideration of $3,500, although
unconditional and absolute on its face, was intended
by the parties to be a mortgage only to secure to said
Jacob Book $2,525, together with the interest thereon
and the costs and expenses incurred in and about the
management of said real estate and matters connected
therewith; and the court so adjudged and decreed said
deed in truth and in fact a mortgage to secure said
sums last aforesaid mentioned. The court also pro-
ceeded to state an account upon the answer of defend-
ant, and the issue joined thereon of the moneys

advanced by plaintiff to defendant and for his benefit, and of the value of the improvements made by plaintiff on said lands, and on the other hand of the rents and profits by plaintiff received therefrom and upon such accounting found defendant Beasly was indebted to plaintiff in the sum of $3,553.12, which sum the court decreed to be a lien upon said real estate; and further adjudged and decreed that the equity of redemption of defendant in said lands be foreclosed, and that plaintiff recover of defendant said sum of $3,553.12; and that the same with interest be paid in sixty days from the entry of the decree, and if not, that said sum be levied of said real estate, and that the sheriff proceed to sell said lands to satisfy said judgment and lien; and ordered personal judgment over for any unpaid balance. It was further adjudged and decreed that if defendant paid sum within the time allowed by the decree, the defendant should be restored to the possession of all of said lands and have his writ of restitution, and that plaintiff recover his costs as taxed. From this decree, plaintiff, having made ineffectual motions for a new trial and in arrest of judgment, appealed to this court.

I. This appeal does not seem to involve a difference of opinion between the parties as to the principles of law and equity which should prevail in its determination. The controversy arises rather out of their application to the evidence.

No one now questions that a court of equity may decree a conveyance, absolute in form, to be a mortgage only, and foreclose it as such—nor that parol evidence is competent to show that such a deed was intended only as a security for debt. *O'Neill v. Capelle*, 62 Mo. 202; *Cobb v. Day*, 106 Mo. 278; Story, Eq. Jur. [13 Ed.], sec. 1018; *Hargadine v. Henderson*, 97 Mo. 375.

The presumption of course arises that the instru-

ment is what it purports to be on its face—an absolute
conveyance of the land—and the burden is on the
grantor to overcome this presumption and establish it
as a mortgage. 3 Pomeroy's Eq. Jur. [2 Ed.], sec.
1196.

Whether any particular transaction thus amounts
to a mortgage must, in the nature of things, depend
largely upon the peculiar facts of each case, the real
inquiry being: "Was the conveyance when executed
intended as a security for a debt?" And if the inves-
tigation discloses the continued existence of a debt by
the grantor to the grantee, either a debt existing prior
to the conveyance, or a debt arising from a loan made
at the time of the conveyance, evidenced by a note or
bond or like agreement, and this debt is left subsisting,
not discharged or settled by the conveyance, the case is
much simplified, and the transaction is held a mortgage.
So, also, if the conveyance is given in consideration of
a previous debt due by the grantor to the grantee, and
the debt still remains, so that the grantee may enforce
it against the grantor, the conveyance would be held a
mortgage. Mr. Pomeroy, in his most excellent treatise
on Equity Jurisprudence, instances still another case.
He says: "There may be neither a present loan nor
an antecedent debt, but the grantee may assume some
outstanding liability of the grantor or pay off some
claim against the grantor so that an obligation to reim-
burse him would rest on the grantor, and the convey-
ance may be intended to indemnify the grantee and
secure the performance of the grantor's future contin-
uing obligation, in which case it would be clearly a
mortgage." Subordinate to these general *criteria* for
determining the character of the conveyance, whether
an absolute deed or a mortgage, the courts hold as
significant and important the existence of a collateral
agreement by the grantor to pay money; his liability to

pay interest; the surrender or cancellation of the evidences of debt, or suffering them to remain outstanding; the substitution of other instruments of indebtedness in place of the old; the fact that the grantor is left in possession; and an application or negotiation for a loan pending the transaction.

We have in this record the following facts tending to establish that this quitclaim was intended only as a mortgage. This conveyance had its inception in an application for a loan. Plaintiff and defendant agree on this proposition, that when defendant was being urged to pay the Minton mortgage plaintiff told defendant to make a new loan and defendant was endeavoring to negotiate the loan, and plaintiff attempted to borrow the money for him, and failing in this, plaintiff agreed to take this deed and assume the liabilities. Plaintiff assumed to settle these antecedent debts and took this land. Defendant testifies that the agreement was that plaintiff was to assume all the liabilities, receive the rents and profits, and keep down taxes and interest, and defendant was to keep the dwelling house and the lots north of the barn. Plaintiff agreed that defendant was to keep possession of the dwelling and store, but only for that year. The subsequent conduct of the parties corroborates defendant's evidence. Although plaintiff claims it was an absolute conveyance he permits defendant to remain in possession until 1892 before he even demanded rent of defendant. This is regarded in all the books as a most significant fact. The defendant is strongly supported in his claim by other circumstances. A number of witnesses testified to plaintiff's declarations and statements that he simply held the deed as a security for his advances; another corroborates defendant's evidence that in a conversation about the matter defendant asked plaintiff if it was not the original

agreement that defendant should have the right to redeem, and plaintiff admitted that was the contract but said "he did not intend for it to run forever." There is no evidence that plaintiff ever surrendered any of defendant's notes or coupons which he assumed and paid. Nor can there be much doubt that long after plaintiff took possession he attempted to borrow the amount of the liens from Mr. Cunningham, and proposed to have defendant and his wife execute the mortgage and notes.

The holding of the old notes as evidence of debts; allowing defendant to remain in possession of the homestead and appurtenant lots for five years without demanding rent; the efforts to borrow money of Cunningham to pay the loan; the failure to disavow any right in defendant to redeem when Mr. Hinkle offered to carry the loan, and advising defendant that Hinkle was trying to swindle him, and that he had better let it remain as it was; the fact that the debt amounted to only about $2,500 in the first place and the land was worth at least $3,500 then and soon thereafter became worth over $5,000; the fact that the transaction originated in the effort to obtain a loan— all these facts tend strongly to support the finding of the chancellor that this quitclaim was intended as a mortgage and not an absolute deed.

Were we less satisfied, however, with our conclusion that it was intended as a mortgage and had considerable doubt as to the nature of the transaction, we think the learned circuit judge would have been justified in holding it to be a mortgage upon the principle announced by this court that: "Courts of equity watch transactions of this sort with such jealous and ever vigilant solicitude that, if the matter be in doubt, they will resolve that doubt in favor of the theory of a mortgage, and compel the transaction to assume and

wear that hue and complexion." *O'Neill v. Capelle,* 62 Mo. 202; Story's Eq. Jur., secs. 1018 and 1019; *Franklin v. Ayer,* 22 Fla. 654.

In this case the finding necessarily depended in a great degree upon the oral testimony of the witnesses, their manner and bearing before the court. It is in such cases that this court defers to the finding of the circuit court.

In this case the judgment accords with our own views of the evidence and the decree is in all things affirmed.

Sherwood and Burgess, JJ., concur.