## REILLY v. CULLEN, Appellant.

### Division One, December 22, 1900.

1. **Equity or Law Case:** TRUSTEE: TO DECLARE DEED TO BE MORTGAGE. Under certain conditions a suit to call a trustee to account for the proceeds of trust property disposed of by him is an action at law. But before the plaintiff can have, one who is by the face of the deed a purchaser of the land for value without condition, adjudged to be a trustee, the absolute deed must be decreed to be a mortgage, and it is only a court of equity that can transform an absolute deed into a mortgage.

2. **Pleading:** CONTRACT: ORAL DEMURRER. The ultimate facts constituting a cause of action, as distinguished from the evidentiary or argumentative facts, should be stated in the petition. To set out *in haec verba* the contract on which the case is founded is to plead evidence, not facts. In such case the petition is demurrable. But if no demurrer is filed and no objection is made to the petition until the trial is on, the objection that it does not state a cause of action comes too late, if, by construing the petition then as stating what the evidence pleaded tends to prove, it can be held to state a cause of action.

3. **Absolute Deed:** MORTGAGE: DEFENSE: PAROL EVIDENCE. A defeasance which may have the effect to convert an absolute deed into a mortgage may be contained in a separate document, and as between the parties and privies, in equity, the fact that a deed absolute on its face was given to secure a debt may be established by parol evidence, and thus the deed be in effect converted into a mortgage.

4. ———: ———: EXTENSION OF TIME BY PAROL: CASE STATED. Plaintiff owned real estate incumbered by a mortgage for $6,000, which was about to be foreclosed for the non-payment of two semiannual interest notes, and besides he was indebted to defendant in the sum of $374. He made a deed to defendant, absolute on its face, but contemporaneously therewith it was in writing agreed that defendant was to "pay the interest on the $6,000 loan to prevent sale under

foreclosure," and to secure to said defendant "money owed to him by said plaintiff." Defendant further agreed "to allow" said plaintiff "to sell said property, or to sell it himself, and on payment to him of what money" plaintiff "owes" him "and what money he pays out on said property, together for reasonable compensation for his trouble," said defendant "will make a deed of said property to" plaintiff or "to whomsoever he may designate. This agreement to last sixty days." *Held,* that the deed was intended to be a mortgage, and made Cullen a trustee, and being once a mortgage it continued to be a mortgage, and the rights of the mortgagor can only be extinguished by regular foreclosure and sale. *Held,* also, that the question of whether or not the agreement could be shown by parol evidence to have been extended beyond the sixty days, is not in the case, for two reasons: first, since the mortgagor's rights could be extinguished only by sale or foreclosure, this clause was absolutely void for the purpose of showing that it was intended and understood to mean that at the end of the sixty days the mortgagor's interest should be gone forever; second, it only meant that for that period either party was to have the right to sell the land, according to the terms of the agreement, without going into court to foreclose or redeem.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Stewart, Cunningham & Eliot* for appellant.

(1) The contract in question is within the statute of frauds as affecting an interest in lands. It is also within the statute touching trusts. R. S. 1889, secs. 3418 and 3416. (2) A renewal, modification or extension of a contract is as much within the statute as the original contract. Rucker v. Harrington, 52 Mo. App. 431; Curle's Heirs v. Eddy, 24 Mo. 117. (3) Part performance does not take a contract out of the statute of frauds in an action at law. Atwood's Adm'r v. Fox, 30 Mo. 499; 8 Am. and Eng. Ency. of Law (1 Ed.),

p. 739.    (4)  Entire performance by one party does not take
the case out of the statute in a legal action, unless the per-
formance is of that side of the contract touched by the stat-
ute, leaving only executory matters not within the evils to
be prevented.    Brown on Statute of Frauds, secs. 116 and
117; Pitcher v. Wilson, 5 Mo. 47; Townsend v. Hawkins, 45
Mo. 286; Devore v. Devore, 138 Mo. 181.    (5) Even in
equity the performance which takes the case out of the stat-
ute must be of the very contract in question, and not of an
earlier or collateral matter.    Emmel v. Hayes, 102 Mo. 186;
Lydick v. Holland, 83 Mo. 707.    (6) An express trust is
always within the statute at law or in equity.    Where a trust
has been declared in writing and there is no charge of fraud
or mistake, even equity will refuse to modify it by parol evi-
dence.    Perry on Trusts, secs. 76, 83, 162; Miltenberger v.
Morrison, 39 Mo. 71; Rodgers v. Ramey, 137 Mo. 598.    (7)
The policy of this State is to uphold the statute of frauds.
Ringer v. Holtzclaw, 112 Mo. 519; Weil v. Willard, 55 Mo.
App. 376.    (8) If the answer denies the contract, the statute
of frauds is properly raised at the trial by objection to the
evidence.    Boyd v. Paul, 125 Mo. 9; Tombs v. Basye, 65
Mo. App. 30; Withnell v. Petzold, 104 Mo. 412.    (9) A
court of law will not entertain a suit for damages for an
alleged breach of trust cognizable only in equity.    The juris-
diction in equity is exclusive.    Perry on Trusts, sec. 17;
Pomeroy on Eq. Jur., sec. 137.

*H. A. Loevy* for respondent.

(1) Even if respondent had taken a nonsuit without any
instruction that he could not recover having been given by the
court, it was not necessary that such instruction should have
been given to entitle respondent to have the action of the

court reviewed.   The rule is when, during the trial, the court decides questions adversely to plaintiff which entirely dispose of plaintiff's case, he need not wait for the instruction, but can take a nonsuit then.   State to use v. Smith, 65 Mo. 469; Roeder v. Shryock, 61 Mo. App. 487.   (2) The statute of frauds has no application to this case.   63 Mo. 464; 60 Mo. App. 546; Carrick v. Mincke, 60 Mo. App. 142.   (3) Where there is full performance by the plaintiff, he may recover on the contract itself, and this in a court of law. Marks v. Davis, 72 Mo. App. 562; Bless v. Jenkins, 129 Mo. 657; Andrews v. Broughton, 78 Mo. App. 190.   (4) Where property has been conveyed, its value may be recovered by the grantor.   Dix v. Marcy, 116 Mass. 416.

VALLIANT, J.—Plaintiff sues to recover a balance alleged to be due him on account growing out of a real estate transaction between him and defendant.   The petition states that plaintiff, being the owner of the land in question, and it being under a deed of trust for $6,000 liable at the date of the agreement in question to foreclosure on account of default in the payment of two interest notes for $180 each, and being indebted to defendant's firm in the sum of $374, entered into a written agreement with him as follows:

"St. Louis, February 18, 1897.

"This agreement between W. V. M. Reilly and M. J. Cullen, witnesseth, that Wm. V. M. Reilly has this day conveyed by deed to said Cullen, his property on Evans avenue, on the following conditions:   Mr. Cullen pays the interest on loan of $6,000 on said property, to prevent sale under foreclosure, and to secure said Cullen money owed to him by said Reilly.   Mr. Cullen agrees to allow said Reilly to sell said property, or to sell it himself, and on payment to him of what Reilly owes Cullen, and what money he pays out on

said property, together with reasonable compensation for his trouble, said Cullen will make deed of said property to Reilly, or to whom he may designate. This agreement to last for sixty days from this date. W. V. M. Reilly, M. J. Cullen."

Upon which was indorsed the following: "It is agreed under contract on reverse side, to leave to the judgment of John J. Lane and D. J. Hayden the decision as to acceptance of any trade or sale of said property." Signed by the parties as above.

The petition further states that the agreement above mentioned was afterwards extended by consent of both parties for an additional period of sixty days, that the property was worth $12,000, that defendant had paid the two semi-annual interest notes above mentioned, which, with what he before owed, made plaintiff's total indebtedness to defendant $614, besides costs of advertising, the precise amount of which plaintiff did not know; that defendant had collected rent for the premises from February 13 to May 17, 1897; that defendant, without notice to plaintiff and without the approval of Lane or Hayden, had, on the date last named, sold the property to one Diesing for $12,000 subject to the incumbrance of the $6,000 deed of trust above mentioned and the taxes for 1897, and had received the difference from Diesing, $6,000, in cash. By reason of which the petition alleges, plaintiff has been damaged to the extent of the difference between the price paid by Diesing and the reasonable market value of plaintiff's equity in said property, to-wit, $6,000, and also the rent plaintiff would otherwise have derived from three of the houses on said lot from February 18, 1897, about $400. Judgment is asked for $6,400, less the amount of credits to which defendant may be entitled.

The answer of defendant admits the written agreement,

denies the alleged extension, also denies the alleged value of the property, avers that he sold it after the expiration of the sixty days for $7,600, and exhibits with his answer an account showing the disposition he has made of the proceeds.

When the cause came on for trial the plaintiff demanded a jury, defendant objected on the ground that it was a suit in equity, but the court ruled with the plaintiff that it was an action at law, and a jury was called.

Upon the plaintiff's first offer of evidence, defendant objected on the ground that the petition did not state a cause of action at law, but the court overruled the objection and the trial progressed.

Plaintiff introduced the written contract in evidence, and then undertook to prove a parol agreement to extend the period mentioned in the contract sixty days longer. The court upon objection of defendant excluded the evidence. In the discussion which followed the objection, the court ruled that the sixty days mentioned in the written agreement was an essential part of the contract and that the alleged extension of the period could be proven only by writing signed by the parties. Thereupon the plaintiff took a nonsuit with leave, and filed a motion to set the same aside, alleging as ground for the same the exclusion of the parol evidence offered, the giving of an instruction to the effect that plaintiff was not entitled to recover, and refusal of the court to submit the case to the jury. The court sustained the motion on the ground that "the court should have admitted parol evidence as to the contract in testimony." From this order the defendant appealed.

The first question presented to the trial court was, is this an action at law or a suit in equity? The plaintiff's contention was that it was an action at law, the defendant's that it was a suit in equity; the court ruled in favor of the plain-

tiff's contention. That was an erroneous conception of the case. The defendant's position on that question was correct; it is a suit in equity and not cognizable in a court of law. It is a suit to call a trustee to account for the proceeds of the trust property disposed of by him. Under certain conditions judgment may be had against a trustee in an action at law for the proceeds of trust property disposed of by him. The decisions of this court referred to by the learned counsel for the plaintiff in support of that proposition amply sustain it. [Dozier v. Jerman, 30 Mo. 216; Thornburg v. Jones, 36 Mo. 521; Railroad v. Green, 68 Mo. 177; Sherwood v. Saxton, 63 Mo. 78.] The plaintiff's theory of the case, pressed with effect in the trial court, was in the line of those decisions. But there is one feature that distinguishes this case from those and puts it outside of a court of law. The defendant, who is here sought to be adjudged a trustee, is, by the face of deed in question, a purchaser of the land for value, without condition, therefore, before he can be adjudged a trustee, the absolute deed must be decreed to be a mortgage. A court of law must take the deed for what it is on its face; it is only a court of equity that can transform an absolute deed into a mortgage.

The petition itself is not beyond criticism under the rules of good pleading (although it follows what seems to have become a not unusual practice) and if it had been demurred to on the statutory ground that it did not state facts constituting a cause of action, the demurrer should have been sustained. The statute requires the facts constituting the cause of action to be stated. By this is meant the ultimate facts as distinguished from the evidentiary or argumentative facts. The statute in this respect lays down for the code-pleader in clearer terms the same rule that the common law on this subject prescribes, that is, that a plea must not be

argumentative. To set out in the petition *in haec verba* the contract on which the case is founded is to plead the evidence, not the facts. A pleader should determine in his own mind the legal effect of the written contract or other document that underlies his case, and plead it by its legal effect as he understands it, and as he purposes to maintain it. If the instrument is merely copied into the petition it leaves uncertain the issue intended to be tendered, depending on the construction that may be put upon it at the trial. Our code pleading furnishes no authority for such uncertainty. But where, as in this case, no demurrer is filed and no objection is made to the petition until the trial is on, it comes too late, if, by construing the petition then as stating what the evidence pleaded tends to prove, it constitutes a cause of action. This petition is susceptible of such construction.

What was the effect of the written agreement of February 18, 1897, upon the deed by which the plaintiff conveyed the land to defendant? Of the deed itself we have no positive assurance except the recital in the agreement that it was of the same date and conveyed the land from plaintiff to defendant, which is not denied. From this we may infer that it was an absolute deed on its face. But a defeasance which may have the effect to convert an absolute deed into a mortgage may be contained in a separate document, and as between the parties and privies, in equity, the fact that a deed absolute on its face was given to secure a debt may be established even by parol evidence and thus convert the deed in effect into a mortgage. A great text-writer on this subject expresses it thus: "In equity, the character of the conveyance is determined by the clear and certain intention of the parties; and any agreement in the deed, or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of

money, will make it such, and give to the mortgagor the right of redemption. A deed absolute on the face of it, and though registered as a deed, would be valid and effectual as a mortgage, as between the parties, if it was intended by them to be merely a security for a debt, and this would be the case though the defeasance was by an agreement resting in parol." [4 Kent Com. (14 Ed.), star p. 142.]

Another great writer says: "Every conveyance of land which is in fact, whatever it may be in form, a security for a debt, contemporaneous or antecedent, is in equity a mortgage." [2 Story Eq. Jur. (13 Ed.), sec. 1018.] And this equitable doctrine we have often declared. [Turner v. Kerr, 44 Mo. 429; Armour Pack. Co. v. Wolff, 59 Mo. App. 665; O'Neill v. Capelle, 62 Mo. 202; Hargadine v. Henderson, 97 Mo. 375; Book v. Beasly, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335.]

Now, with that undoubted principle of law before us, let us look at this transaction.

Plaintiff's land is encumbered by a $6,000 deed of trust which is about to be foreclosed for default in the payment of two semiannual interest notes, and plaintiff is also indebted to defendant in the sum of $374. Thereupon, he conveys his land to defendant by a deed which we have assumed is absolute on its face, but contemporaneous therewith, the parties execute this agreement in writing, wherein it is said the deed is on the following conditions: "Mr. Cullen pays the interest on loan of $6,000 on said property to prevent sale under foreclosure and to secure to said Cullen money owed to him by said Reilly. Mr. Cullen agrees to allow said Reilly to sell said property, or to sell it himself and on payment to him of what money Reilly owes Cullen and what money he pays out on said property together with reasonable compensation for his trouble, said Cullen will make deed of said property

Reilly v. Cullen.

to Reilly or to whoever he may designate." Could the intention of the parties be more clearly expressed that the deed was simply designed to secure Cullen in the debt that was already owing him and the further outlays that he was to make, and those debts being paid and reasonable compen-·sation for his services, the land was to be reconveyed to Reilly or to whom he should name ? The language is too plain for construction. But the difference between the parties grows out of their construction of the last sentence in the agreement, viz.: "This agreement to last for sixty days from this date." Both plaintiff and defendant at the trial seemed to construe that clause to mean that at the end of sixty days if the property was not sold, Reilly's interest in it was gone forever. Hence, the plaintiff undertook to prove by oral testimony that the parties agreed to extend that period for sixty days longer. The court ruled that that was essential, but that it could not be proven except by written agreement, and the nonsuit followed. When we read the deed and the defeasance together and reach the conclusion as we must, that they constitute· only a mortgage for the security of the indebtedness named, then the maxim applies in full force "once a mortgage always a mortgage," and the right of the mortgagor is never extinguished until by regular foreclosure and sale. And this is the law, no matter if the parties both intended otherwise, it is a condition that arises not by contract but by operation of law, and· often in spite of contract. The eminent commentator first above quoted says: "In ascending to the view of a mortgage in the contemplation of a court of equity we leave all these technical scruples and difficulties behind us. Not only the original severity of the common law, treating the mortgagor's interest as resting upon the exact performance of a condition, and holding the forfeiture or breach of a condition to be absolute, by

non-payment or tender at the day, is entirely relaxed; but the narrow and precarious character of the mortgagor at law is changed, under the enlarged and more liberal jurisdiction of the courts of equity........ The equity of redemption grew in time to be such a favorite with the courts of equity, and was so highly cherished and protected, that it became a maxim, that 'once a mortgage, always a mortgage.' ....... The equity doctrine is, that the mortgage is a mere security for the debt, and only a chattel interest, and that until a decree of foreclosure, the mortgagor continues the real owner of the land." [4 Kent's Comm., star page 158-9.]

Another learned text-writer expresses it thus: "So fully recognized and protected are the equitable rights of the mortgagor, that he is relieved from his own express agreement that upon failure to pay the mortgage debt at the time stipulated, his estate shall be forfeited, such agreements being held utterly void in equity........ It matters not how strongly the parties may express their agreement that there shall be no redemption, the intent being contrary to the rules of equity, it can not be carried into effect." [2 Jones on Mortgages, sec. 1039.]

Therefore, even if the parties understood and intended by the clause now under discussion that at the end of sixty days, if Reilly had not sold the land, his interest should be gone forever, it would be absolutely void for that purpose. But that is not what the clause means. It only means that for that period either party was to have the right to sell the land without going into court to foreclose or redeem, and upon the payment out of the proceeds to Cullen of his debts and compensation, he should make the deed, if Reilly sold it, to Reilly or to whomsoever Reilly should name. Doubtless Reilly would have the right to sell the land upon satisfying Cullen's debts without that clause, for, with Cullen's demands paid, he had, as against Reilly, no further interest in it.

Whether, after the expiration of that period, Cullen, as between the parties, had the right to sell the land otherwise than through a regular foreclosure procedure, and whether since he did so sell it, he is liable to account for the proceeds of the sale only, or for the reasonable value of the property, are questions which may arise in the further progress of this case, but not yet ready for our judgment. The fact now is that Cullen, whether he had the right to do so or not, has sold the land and is liable as trustee to account to plaintiff for the proceeds, or the reasonable value of the land as may be adjudged, and for the rents, if any, he has received, and out of which he is entitled to be paid what Reilly owed him, what he has advanced to protect the property and reasonable compensation for his services.

The judgment of the circuit court setting aside the nonsuit and granting a new trial is affirmed.

All concur.